## **SETTLEMENT AGREEMENT, GENERAL RELEASE AND COVENANT NOT TO SUE**

This Settlement Agreement, General Release and Covenant Not to Sue ("Agreement") is entered into by and between Defendants Bacchus Winery, Golf, and Vineyard, LLC d/b/a Whyte Horse Winery ("Company"), Amanda Crain, and Beth Thomas-Adair (collectively, "Defendants") and Plaintiff Kylie Moore ("Plaintiff"), jointly referred to herein as the "Parties."

### **Recitals**

A. Plaintiff was previously employed at the Company from September 4, 2020 to July 23, 2021.

B. Plaintiff filed a civil collective action, *Kylie Moore, individually and on behalf of those similarly situated v. Bacchus Winery, Golf, and Vineyard LLC d/b/a Whyte Horse Winery, Beth Ann Thomas-Adair, and Amanda Thomas-Crain*, case number 4:21-cv-00071-PPS-JEM, (the "Lawsuit") on October 19, 2021. Plaintiff alleged violations of the Fair Labor Standards Act with respect to a purported invalid tip pool on behalf of herself and others similarly situated. At this point, no other plaintiffs have been added to this Lawsuit as class members. The Lawsuit also alleged claims of unpaid overtime in violation of the Fair Labors Standards Act and violations of the Indiana Right of Publicity Act as to Plaintiff only.

C. Defendants have and continue to deny any liability to Plaintiff for the matters alleged by Plaintiff, and enter into this Agreement solely to avoid the expense of further litigation.

D. In consideration of the mutual covenants, promises, and obligations contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is mutually acknowledged, and subject to the approval of the Court, the Parties hereby agree as follows:

### **Agreement**

1. **Definitions.** Throughout this Agreement, the term "Released Parties," when capitalized and used alone, shall encompass the following:

   a. Bacchus Winery, Golf, and Vineyard, LLC d/b/a Whyte Horse Winery, and any other subsidiary, parent company, affiliated entity, related entity, predecessor or successor entity, or any division of the foregoing;

   b. Amanda Crain;

   c. Beth Thomas-Adair; and

    d. Any current or former officer, director, trustee, agent, employee, insurer, shareholder, attorney, representative, or employee benefit or welfare program or plan (including the administrators, trustees, and fiduciaries of such program or plan) of an entity referenced in or encompassed by subparagraph 1(a).

2. **Consideration.** In consideration of the promises contained in this Agreement, and in consideration for Plaintiff completing all paperwork necessary to effectuate the dismissal with prejudice of the pending Lawsuit, which dismissal with prejudice is a condition precedent to any payment becoming due under this Agreement, Defendants shall pay Plaintiff the gross sum of Twenty Thousand Dollars and Zero Cents ($20,000.00), payable as follows:

    a. A gross amount of Five Thousand Eight Hundred Seventy-Two Dollars and Four Cents ($5,872.04) shall be payable to Plaintiff, less all applicable taxes and withholdings. Plaintiff understands and agrees she must provide an executed W-4 Form to Counsel for Defendants in order for Defendants to process this payment. Defendants will report this amount on a Form W-2. This check will be sent to Plaintiff, in care of her counsel, Jason Ramsland, within thirty (30) business days following the Effective Date of this Agreement (as defined herein);

    b. A gross sum of Five Thousand Eight Hundred Seventy-Two Dollars and Three Cents ($5,872.03) shall be payable to Plaintiff for alleged non-wage damages. A Form 1099 shall be issued to Plaintiff for this amount. Plaintiff understands and agrees that she must provide an executed W-9 Form to Counsel for Defendants in order for Defendants to process this payment. This check will be sent to Plaintiff, in care of her counsel, Jason Ramsland, within thirty (30) business days following the Effective Date of this Agreement (as defined herein); and

    c. A gross amount of Eight Thousand Two Hundred Fifty-Five Dollars and Ninety-Three Cents ($8,255.93) shall be payable as attorneys' fees and costs to Plaintiff's counsel, Jason Ramsland, within thirty (30) business days following the Effective Date of this Agreement. Plaintiff's counsel must provide an executed W-9 form to Counsel for Defendants in order for Defendants to process this payment. Defendants will report this amount on a Form 1099 issued to Plaintiff's counsel.

In paying the amounts specified in this Paragraph 2, the Defendants make no representation as to the tax consequences or liability arising from said payment. Moreover, the Parties agree that any tax consequences and/or liability arising from the payment to Plaintiff shall be the sole responsibility of Plaintiff. To this extent, Plaintiff acknowledges and agrees that she will pay any and all income tax which may be determined to be due in connection with the payments described in this Paragraph 2. Plaintiff also agrees to indemnify the Released Parties for any and all tax liability (including, but not limited to, fines, penalties, interest, and costs and expenses, including attorneys' fees) arising from or relating to the payment described in this Paragraph 2 and/or imposed by the Internal Revenue Service, the State of Indiana, or any other taxing agency or tribunal as a result of Defendants' failure to properly withhold taxes on said payments or any portion thereof.

The payments described herein reflect consideration provided to Plaintiff over and above anything of value to which Plaintiff is already entitled. Plaintiff agrees that the consideration and sums included in this Paragraph 2 are the maximum sums ever to be due Plaintiff from Defendants, and she hereby relinquishes and waives any rights to other forms of payment or benefits under any other agreement between Plaintiff and Defendants, whether written, oral, express or implied.

3. **Dismissal of Lawsuit with Prejudice.** The Parties desire to fully resolve the dispute underlying the Lawsuit and dismiss the Lawsuit with prejudice. Before any payments are made pursuant to Paragraph 2 of this Agreement, the Parties will file a Joint Motion for Approval of Settlement, in a form to be agreed by the Parties. Each Party shall bear its own costs and attorneys' fees. The Parties shall work together in good faith, and take whatever actions are necessary in order to effectuate the goals of this Paragraph. By way of example, if, for any reason, the Court declines to accept the joint stipulation and dismiss the case, the Parties shall submit an amended stipulation or such other joint filing that will dispose of the matter on terms as similar to those in the original stipulation as possible. Approval of the Settlement Agreement and Dismissal of the Lawsuit with Prejudice are conditions precedent to any payment becoming due under this Agreement.

4. **General Release and Waiver of Claims.** Plaintiff (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Released Parties from any claim, demand, action, or cause of action, known or unknown, which arose at any time from the beginning of time to the date Plaintiff executes this Agreement, and waives all claims relating to, arising out of, or in any way connected with her interactions with Released Parties and/or employment with Company, the cessation of that employment, or the compensation or benefits payable in connection with that employment or the cessation of that employment, including (without limitation) any claim, demand, action, or cause of action, including claims for attorneys' fees and costs, (hereinafter collectively referred to as "Claims"), based on but not limited to: The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq; The Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621, et seq; The Americans With Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, et seq.; The Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et seq.; The Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, et seq.; The Civil Rights Act of 1866 and 1964, as amended, 42 U.S.C. § 1981; The Lilly Ledbetter Fair Pay Act of 2009; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.; The Pregnancy Discrimination Act; the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161, et seq. (except if eligible, Plaintiff's right to obtain continuation of insurance coverage); The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, et seq.; The Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, et seq., and any similar state law; The Equal Pay Act, as amended, 29 U.S.C. § 206, et seq.; The National Labor Relations Act, 29 U.S.C. § 151, et seq.; The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, et seq.; The Genetic Information Nondiscrimination Act of 2008, as amended, 42 U.S.C. § 2000ff, et seq.; The Indiana Civil Rights Law, Ind. Code § 22-9-1-1, et seq., the Indiana wage payment statute, Ind. Code § 22-2-4-1 et seq., and any Indiana wage law; The Indiana Right of Publicity Act, Ind. Code § 32-36-1 et seq., The Indiana Family Military leave law; Any state civil rights law; Any existing or potential entitlement under any Company program or plan, including wages or other paid leave; Any existing or potential agreement, contract, representation, policy, procedure, or statement (whether any of the foregoing are express or implied, oral or written); Claims arising under any federal, state and local

fair employment practices law, and any other employee or labor relations statute, executive order, law or ordinance, and any duty or other employment-related obligation, and/or claims involving intentional and/or negligent infliction of emotional distress, discrimination, harassment, retaliation and/or wrongful termination.  Plaintiff further agrees to release and discharge Defendants, and waive all other claims against Defendants, including but not limited to Claims under the U.S. or Indiana Constitutions, Claims arising from any other type of statute, executive order, law, ordinance, code, or common law, Claims arising from contract or public policy, as well as tort, tortious cause of conduct, breach of implied covenant of good faith and fair dealing, breach of contract, invasion of privacy, or defamation, together with all claims for monetary and equitable relief, punitive and compensatory relief and attorneys' fees and costs.

Plaintiff understands and agrees that she is releasing the Released Parties from any and all Claims by which Plaintiff is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Plaintiff or on Plaintiff's behalf. Notwithstanding the foregoing, this Agreement is not intended to operate as a waiver of any retirement or pension benefits that are vested, the eligibility and entitlement to which shall be governed by the terms of the applicable plan.  Moreover, nothing in this Paragraph or Agreement shall be interpreted to waive or extinguish any rights which -- by express and unequivocal terms of law -- may not under any circumstances be waived or extinguished.

5.  **Covenant Not to Sue.**  Plaintiff agrees that she will never sue or file a lawsuit against the Released Parties including, without limitation, any lawsuit concerning or in any way related to her employment with the Company, the termination of that employment, the compensation or benefits payable in connection with her employment, or any other interaction or relationship with the Released Parties which may have occurred prior to the Effective Date of this Agreement.  Should Plaintiff violate any aspect of this Paragraph, Plaintiff agrees that any suit shall be null and void and must be summarily withdrawn and/or dismissed. Plaintiff further acknowledges and agrees that she has not assigned any claim, action or cause of action which she may have against the Released Parties, and that any assignment which concerns or is related to the matters released herein shall be null and void.

This Paragraph and this Agreement shall not operate to waive or bar any claim which by express and unequivocal terms of law may not under any circumstances be waived or barred.

6.  **Non-Admission/Disclaimer of Liability.**  The Parties agree that this Agreement does not render Plaintiff or Defendants a prevailing party in any legal action and that it is not and shall not be considered an admission of liability or wrong-doing by Defendants or Plaintiff. Nothing contained in this Agreement, or any action on the part of Defendants or Plaintiff in resolving this matter, shall be considered or construed as an admission by Defendants or Plaintiff of any wrongful conduct or violation of any law, rule, or regulation, or that either party was entitled to any relief in any form whatsoever.  Defendants hereby state that its sole and exclusive purpose for settling this matter is to avoid the further time and expense associated with defending against the Lawsuit, and not because Plaintiff was entitled to any type of relief, payment, or consideration of any kind or nature whatsoever.

7.  **Non-Disclosure/Non-Disparagement.**  Plaintiff agrees that information she obtained as a result of her position with the Company was proprietary and/or confidential.  Plaintiff

further agrees not to use or disclose (directly or indirectly) any Confidential Information, proprietary information, or trade secrets concerning the Released Parties obtained by her during her employment with the Company and/or relationship with the Released Parties.  For purposes of this Agreement, "Confidential Information" includes, without limitation, all materials and information (whether written or not) about the Company's or the Released Parties' current, prior, or prospective services or business activities, formulae, products, processes, customers, affiliates, confidential personnel information, finances, purchasing, sales, marketing and markets, accounting, customer lists or information, business and insurance contracts, supplier relationships, supplier contracts, agreements, licenses, costs, pricing, profits, improvements, discoveries, software, business methods and formulas, inventions, and other business aspects of the Company, which are not generally known and accessible to the public at large and/or which provide the Company (or the Released Parties) with a competitive advantage.

Plaintiff further agrees that she will not make any tortiously defamatory statements or representations that disparage, demean, or impugn the Released Parties, including without limitation any tortiously defamatory statements impugning the personal or professional character of any director, officer, or employee of the Company, nor will Plaintiff encourage or assist others to make any such statements or representations.

Notwithstanding the foregoing, nothing in this Paragraph or this Agreement shall preclude Plaintiff from responding truthfully to inquiries made in connection with any legal or governmental proceeding, whether current or anticipated, pursuant to subpoena, court order, or other legal process or investigation (including the provision of information to legal counsel for the Company); and nothing in this Agreement shall be intended to limit Plaintiff's ability to disclose information which – pursuant to express and unequivocal terms of law – may be disclosed to government agencies or otherwise.  Furthermore, nothing in this Paragraph or this Agreement is intended to conflict with the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1833(b), or create liability for the disclosures of trade secrets expressly allowed by 18 U.S.C. § 1833(b).  As such, the parties agree that Plaintiff shall not be held liable for the disclosure of a trade secret in violation of this Agreement provided that the disclosure (a) is made in confidence to a federal, state or local government official or to an attorney for the sole purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

8. **Confidentiality.**  Plaintiff expressly agrees to keep all terms and conditions of this Agreement, as well as the negotiations leading up to the Agreement (including offers and counter-offers), strictly confidential and that she will never disclose (and has not disclosed) any information concerning the Agreement or the negotiations leading up to the Agreement to anyone other than her legal counsel, spouse, fiancé, or tax advisor, if any, *provided that* Plaintiff shall inform any such specified person that she is bound by this confidentiality covenant and, prior to any disclosure, require that such person agree to abide by the terms of this covenant and not disclose any information concerning the Agreement (or the negotiations thereto).  Plaintiff further agrees to assume responsibility for any disclosure in breach of this provision by such persons.  If asked, Plaintiff and her representatives may only state that "the matter has been resolved, and the resolution is a matter of public record."  Any further communications or disclosures about the settlement, this Agreement, or the terms and conditions of either are prohibited.  This

confidentiality provision encompasses not only oral and written disclosures, but also indirect or non-verbal gestures or communications suggesting or implying that Plaintiff "won" any dispute, "did well" in the settlement, or otherwise received monetary sums from the Company. Plaintiff agrees that, in the event she is compelled by court order or process to disclose any terms of this Agreement, she shall immediately notify Defendants' legal counsel by facsimile at 317-231-7433 at least seven (7) days prior to any disclosure. Plaintiff acknowledges that disclosure of the terms or amounts of this Agreement (by Plaintiff or anyone she has told) would cause irreparable harm to the Company but in an amount incapable of precise determination.

9. **Successors.** This Agreement shall apply to, and inure to the benefit of, the predecessors, successors, and assigns of the Released Parties and each past, present, or future employee, agent, representative, officer, or director of the Company and any division, subsidiary, parent, or affiliated entity. This Agreement shall also apply to Plaintiff, as well as her heirs, executors, administrators, and agents.

10. **Non-Waiver.** The waiver by the Released Parties of a breach of any provision of this Agreement by Plaintiff shall not operate or be construed as a waiver of any subsequent breach by Plaintiff.

11. **Severability.** The Parties acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, the provisions of this Agreement are severable, and the invalidity of any one or more provisions shall not affect or limit the enforceability of the remaining provisions. In the unlikely event, therefore, that a court of competent jurisdiction determines that any of the terms, provisions, or covenants of the Agreement are unreasonable, the court shall limit the application of any such term, provision or covenant, or modify such term, provision or covenant and proceed to enforce those terms as so limited or modified.

12. **Applicable Law.** This Agreement shall be interpreted, enforced, and governed under the laws of Indiana.

13. **Conditions.** Should Plaintiff breach any provision or obligation under this Agreement, the Parties agree that the range of remedies includes the following:

(a) Plaintiff shall pay all damages (including but not limited to, litigation and/or defense costs, expenses, and reasonable attorneys' fees) incurred by the Company and/or Released Parties following and/or as a result of Plaintiff's breach if such breach is not cured or corrected to the Released Parties' satisfaction within fourteen (14) days of Released Parties mailing written notice of the breach to Plaintiff's last known address;

(b) Plaintiff shall forgo and no longer be entitled to any sum remaining to be paid or conferred pursuant to this Agreement; and

(c) Plaintiff shall – upon written request by Released Parties' request to do so – reimburse Released Parties via certified check for the value of anything previously paid or provided by Released Parties pursuant to Paragraphs 2(a) and (b), save

$500.00. In the event this reimbursement provision is triggered, Plaintiff agrees that the remaining provisions of the Agreement shall remain in full force and effect.

Nothing in this Paragraph is intended to limit or restrict any other rights or remedies the Released Parties may have by virtue of this Agreement or otherwise.

14. **Knowledge and Understanding**. Plaintiff declares, under penalty of perjury, that:

(a) She has been and is hereby advised to consult with her attorney prior to executing this Agreement and has done so;

(b) She has been given a reasonable amount of time within which to consider this Agreement, which allows Plaintiff to make a knowing, voluntary, and fully informed decision;

(c) She has availed herself of all opportunities she deems necessary to make a voluntary, knowing, and fully informed decision; and

(d) She is fully aware of her rights and has carefully read and fully understands all provisions of this Agreement before voluntarily signing.

15. **Effective Date.** The "Effective Date" as used throughout this Agreement means the first day after all of the following conditions have been met: The Parties have both executed the Agreement; Counsel for Defendants has received Plaintiff's completed and executed W-4 and W-9 forms, as well as her counsel's completed W-9 form required to process the payments referenced in Paragraph 2 of this Agreement; and the Court has approved this Agreement and dismissed this Lawsuit with Prejudice.

16. **Contract Construction.** Because Plaintiff and her counsel have reviewed this Agreement, the normal rule that ambiguity should be construed against the drafting party shall not be employed in the interpretation of this Agreement.

17. **Signatures in Counterparts.** This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Such counterparts shall together constitute one and the same document.

18. **Complete Agreement.** This Agreement sets forth the complete agreement between the Parties. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall limit, supersede, nullify, or affect any duty or responsibility Plaintiff may have or owe to the Released Parties by virtue of any separate agreement or otherwise. Plaintiff represents and acknowledges that in executing this Agreement she does not rely and has not relied upon any representations or statements not set forth herein made by the Company or Released Parties, or any of their employees, agents, representatives, officers, or directors with regard to the subject matter, basis, or effect of this Agreement or otherwise.

BY SIGNING THIS RELEASE, PLAINTIFF STATES THAT: I HAVE READ IT; I UNDERSTAND IT AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS; I AGREE TO ALL THE TERMS CONTAINED WITHIN THE AGREEMENT; I AM AWARE OF MY RIGHT TO CONSULT WITH MY ATTORNEY BEFORE SIGNING IT AND I HAVE DONE SO; I HAVE SIGNED IT KNOWINGLY AND VOLUNTARILY.

The Parties have each executed this Agreement on the dates indicated below.

**Plaintiff**

*Kylie Moore*
_____
Kylie J. Moore

Dated: __05 / 11 / 2022__

**Bacchus Winery, Golf, and Vineyard, LLC d/b/a Whyte Horse Winery**

By: *Bacchus Winery, Golf and Vineyard*
Designated Representative

Dated: __5-21-2022__

**Defendant Amanda Crain**

*Amanda Crain*
_____

Dated: __5/22/2022__

**Defendant Beth Thomas Adair**

*Beth Thomas-Adair*
_____

Dated: __5-21-2022__